IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY GORDON,

    Plaintiff,                    No. CIV S- 02-2454 GEB GGH P

    vs.

ANNA M. RAMIREZ-PALMER,      ORDER
Warden, et al.,

    Defendants.

_____/

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Plaintiff filed a motion for a temporary restraining order (TRO), on March 2, 2005, and a motion for a protective order, on April 6, 2005, as well as a request for an order of protection "from the hindering practices of the California Department of Corrections," on July 8, 2005. Defendants filed an opposition to plaintiff's motions and request on July 13, 2005 as well as a request for judicial notice of docket reports and various orders issued in cases of plaintiff's. Defendants, on July 18, 2005, filed a motion to amend/correct exhibits to their opposition to plaintiff's motions and requests. Plaintiff filed a reply to defendants' opposition, on August 8, 2005, which he denominated "objection to opposition...."

1

A court may take judicial notice of court records. See Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994); MGIC Indem. Co. v. Weisman, 803 F.2d 500, 505 (9th Cir. 1986); United States v. Wilson, 631 F.2d 118, 119 (9th Cir. 1980). The court, therefore, grants defendants' request for judicial notice, to which plaintiff offered no opposition. Defendants' unopposed motion to amend or correct the exhibits to their opposition is also granted.

Amended Complaint

The court sets forth the allegations of the amended complaint as they were presented in the Findings and Recommendations, filed on June 30, 3004 and adopted by Order, filed on August 25, 2004. This action proceeds on an amended complaint, filed on January 30, 2003, against defendants Mail Supervisor Nettleton and Warden Ramirez-Palmer.[1] This action was originally filed on November 8, 2002. Plaintiff alleges that, on June 28, 2001, defendant Nettleton intercepted mail sent to plaintiff, sending instead a disposition form disallowing the mail, which had sentimental value for him. First Amended Complaint (FAC), p. 5. Plaintiff has no disciplinary matter pending against him that might prompt such an action. Defendant Nettleton has failed to follow departmental policy as well as deprived plaintiff of his rights under the First, Fifth and Fourteenth Amendments.[2] Plaintiff seeks the return/replacement of the photo(s) at issue and monetary damages.

Motions/Request

In his 3/2/05 request for a TRO, plaintiff alleges that he has been subjected to an adverse transfer, from CMF-Vacaville to Pleasant Valley State Prison (PVSP), for filing grievances against CMF prison staff for withholding his "domestic mail" and delivering his legal mail 15 to 20 days late. Plaintiff claims that for eight days since his transfer, he did not have

---

[1] The amended complaint was modified by order filed on September 17, 2003, dismissing unnamed staff as defendants.

[2] Plaintiff goes on to allege that unnamed staff have deprived him of access to the courts during lockdowns and "fog courts" but, as noted, these unspecified defendants have been dismissed from this action.

access to his personal property. On 2/18/05, plaintiff alleges he was granted access to the law library for 20 minutes and was refused the right to send a notice of change of address to every court in which he has an active case; however, he was allowed to file a notice of change of address in the Eastern District Court. (The court notes that plaintiff filed two notices of change of address in this case, one on February 16, 2005 and one on February 25, 2005). He was apparently refused by a librarian who informed plaintiff that he had to prove he had a court case before he could use the library, but plaintiff cannot retrieve the requisite information from his property due to his adverse transfer and his property being withheld. Plaintiff asks the court to grant him 14 hours a week of mandatory access to the law library, to the extent such access does not interfere with institutional security and an order that he receive his personal property "intact and in a timely manner"; he also asks the court to issue an order applicable not only to PVSP, but also to any other facility to which he may be transferred, directing that he be issued legal materials to pursue his litigation, including pens, paper, postage, white out, "a fully functional typewriter and photocopies" for as long as he is an inmate and indigent. TRO Mtn., (unnumbered), pp. 2-3. Plaintiff includes an exhibit which contains a 602 inmate appeal complaining that his legal mail at CMF is being interfered with and delayed, although this grievance does not appear to be relevant to the issues raised herein with respect to access to his property and the law library at PVSP.

On April 6, 2005, plaintiff filed a motion for a protective order, claiming that he "has been forced to violate prison procedures and policies for the past few years in order to obtain enough writing paper and pens to reddress [sic] the courts...." He contends that, since his transfer to PVSP on 2/11/05, he must rely solely on the institution for supplies to litigate his court actions, having lost his inmate contacts at CMF. Motion for protective order (PO), pp. 1-2.

Plaintiff includes as an exhibit only his request for interview with a law library employee on 2/25/05, which interview was granted on 3/2/05. Exhibit A to PO Mtn. In his request, plaintiff identifies himself as an indigent prisoner and requests legal paper, writing pens

and a typewriter from the PVSP law library. Id. In response, R. Kevorkian at the Facility C library, states that their policy is to provide pleading paper equitably to library users and that enough is kept on hand for requests on any library day. Id. Kevorkian tells plaintiff that, absent a court order requiring it, use of typewriters has been eliminated, a policy consistent with current department policy as specified by the principal librarians's office in Sacramento. Id.

Although this is the only exhibit plaintiff includes with this motion, plaintiff avers that, after receiving the above response, he contacted Correctional Officer (C/O) Sandoval, who directed him to "R&R" to address the issues he had raised. On 3/9/05, plaintiff contacted the "foreman" of R&R, C/O Collins, who directed him to the mailroom, to which he then sent a request for an interview which had not been responded to at the time plaintiff filed this motion. Plaintiff states that he has sent a 602 appeal to the mailroom and received no response. He claims that typically "these people" discard such appeals and two attempts are usually required as well as contacting the appeals coordinator "to achieve the desired goal." PO Mtn., p. 2.

Plaintiff states that he did not receive his property until 3/15/05, following his 2/11/05 transfer to PVSP, and, and in addition to an alleged delay of the transfer of his legal property, plaintiff has been subjected to a denial of "uninterrupted access to his legal property for purposes of litigating his cases." PO Mtn., p. 2. Plaintiff also claims that unspecified legal mail has been taken from him by unidentified prison officials who have told him that he may request access to the mail when needed. However, plaintiff claims that the "flaw" in this system is that, once such a request is made, it takes a week to a month to have the request answered. Id., p. 3.

Plaintiff asks the court to grant him "unhindered access to the courts" by issuing an order for six hours a week in the law library (in unexplained contrast to the 14 hours requested in his prior motion), writing paper in an amount "to file a 25 page brief," pens for writing motions and complaints, "and uninterrupted access to his legal property." Id. Plaintiff also seeks an injunction directing CDC "to cease and desist the practice of limiting paper, writing pens and access to the library that doesn't interfere with the security of the institution." Id., p. 4. Finally,

4

plaintiff wants an order that gives priority (PLU) users access to the law library "during general use and non-emergency lock-downs." Id.

On July 8, 2005, plaintiff filed a "request" for a protective order, wherein he avers that the CDC is refusing to mail unspecified legal mail to parties or attorneys of unidentified responding parties in plaintiff's legal matters. Plaintiff asks the court to require the institution to mail legal mail to "responding partys [sic] of complaints." He includes as an exhibit a copy of a document, dated June 7, 2005, entitled "Title 15/ 3165 / Mailing Legal Documents," which specifies, inter alia, that "the cost of postage for mailing documents to the courts will be charged against an inmate's trust account unless the inmate is without funds at the time the material is submitted for mailing and remains without funds for 30 days after the documents are mailed."

Plaintiff appears to be claiming that as an indigent litigant he is being denied access to the courts by a policy that only allows postage for the mailing of documents to the courts but not service upon opposing parties. Plaintiff also includes exhibits which demonstrate that plaintiff has been denied postage paid envelopes in May and June of 2005, although it is not specified what the envelopes are to be used for, due to his trust account having no funds or a negative balance.

Opposition

Defendants' opposition, which addresses plaintiff's motions filed on March 2, 2006 and on April 6, 2005, argues that they should be denied because 1) plaintiff has failed to present any evidence that he has been hindered from communicating with the courts and from pursuing his litigation; 2) the evidence demonstrates that plaintiff was transferred from CMF because a medical doctor determined that plaintiff's medical needs could be satisfied elsewhere; 3) the evidence shows plaintiff has been provided with library time and supplies adequate to meet court requirements. Opp., p. 2.

At the outset, defendants contend that there is no evidence that plaintiff's transfer from CMF to PVSP was in reprisal, or retaliation for, filing grievances. Plaintiff was

1 incarcerated at CMF from February 7, 2001, to February 11, 2005, before being transferred to
2 PVSP.  Although plaintiff believes he was transferred from CMF in reprisal for filing grievances
3 at that institution, plaintiff does not present any such evidence.  Opp., p. 4, citing TRO Mtn., pp.
4 1-2.  Plaintiff's belief is based on an unsupported allegation that the classification committee
5 recommended his transfer two weeks after his yearly classification establishing his program for
6 the year.  Opp., p. 4, citing TRO Mtn., p. 2.

7 According to defendants, plaintiff's central file documents do not support his
8 belief that he was transferred in reprisal or retaliation for filing grievances.  Instead, the
9 documents indicate that the plaintiff was transferred from CMF due to a determination by a
10 medical doctor that his placement at CMF, a facility staffed and equipped to serve the needs of
11 inmates with medical or psychiatric conditions requiring ongoing specialized medical care, was
12 no longer warranted.  Opp., p. 4.

13 Chief Deputy of Clinical Services Nadim Khoury, M.D., issued a CDC 128-C
14 chrono, on January 14, 2005, which stated: "From a review of the patient's unit health record,
15 it has been determined that there is no medical contraindication to him being cleared for transfer
16 to another institution." Opp., p. 4; Exh. 1.  A week after Dr. Khoury issued his chrono, plaintiff
17 went before the Unit Classification Committee (UCC) for a program review and consideration of
18 the recommended transfer.  The CDC 128-G issued as s result of the UCC meeting stated in part:

> Subject's case is being reviewed per the written direction of M.
> Veal, Chief Deputy Warden, CMF, to assist the Department in
> housing inmates appropriately in order to comply with the Plata
> Court Order.  Inmate Gordon has been identified as having medical
> needs that can be addressed at a CDC institution other than  CMF,
> per CDC 128C, dated 1-14-05. . . . Inmate Gordon indicated that he
> understands Committee's actions but does not agree with them in
> that he has three court deadlines between now and in February, and
> that this is his only concern.  Based on a careful review of all
> available documentation, the housing needs of the Department and
> at the direction of the Chief Deputy, Clinical Services at CMF,
> Committee is acting to refer this case to the [Classification
> Services Representative] with recommendation for endorsement
> and transfer to Pleasant Valley State Prison Level III . . .Committee
> notes this is a non-adverse transfer....


Opp., pp. 4-5; Exh. 2.[3]

Defendants assert that Dr. Khoury's chrono and the UCC's classification chrono demonstrate that plaintiff's transfer was appropriately based on medical considerations and was in no way in retaliation for filing grievances. Opp., p. 5.

Defendants counter plaintiff's contention that his access to the courts was impeded by a delay in obtaining his legal property after he was transferred to PVSP. Defendants assert that plaintiff does not demonstrate that the delay in receiving access to his legal property until March 15, 2005 after he was transferred from CMF on February 11, 2005, impeded his ability to litigate his cases because he does not identify a single instance of how any such delay caused him any difficulty in litigating his cases. Opp., p. 5.

Moreover, defendants argue, there is a documentary record that belies plaintiff's contentions. On the day of plaintiff's transfer, February 11, 2005, plaintiff was issued a property transfer receipt, which he signed on that day, for "2 boxes misc. legal papers." Id., Exh. 13. One box was issued to plaintiff and the other was stored, according to the receipt. Id. Storage of personal property occurs when a plaintiff's personal property exceeds the six cubic feet of such property an inmate is allowed in his cell. Id., Declaration of P. Sanchez, PVSP litigation coordinator, ¶ 9.

As for plaintiff's remaining personal property, six boxes, including a non-working television, a clock radio, a fan, an extension cord, various small utensils and supplies, and legal papers were shipped to PVSP from CMF by February 25, 2005, the date on which plaintiff's receipt of this property is acknowledged by him on a receipt. Opp., p. 6, Exh. 14. In plaintiff's, February 11, 2005 CDC 602 grievance about this personal property, filed under two log numbers: PVSP 05-00594 and CMF 05-M-573, plaintiff does not complain about an inability to litigate his lawsuits, although the court notes, plaintiff does complain that his transfer was adverse, despite

---

[3] The court has included language in this excerpt additional to that quoted by defendants.

its characterization otherwise.  Opp., p. 6, Exh. 10.  In the first level response to this grievance, CMF [4]Associate Warden Crawford states: "A review of your CMF Property Receipt (CDC-143) dated February 23, 2005, revealed that your property was sent to you at PVSP . . . ."  Id.  The court notes that the only date on the receipt appears to be February 25, 2005, rather than February 23, 2005, and that the appeal response did not occur until April 25, 2005.  However, Assoc. Warden Crawford of CMF told plaintiff to advise PVSP if any personal property was missing and, according to defendants, plaintiff did not appeal this grievance to any higher level.  Id.

Defendants state that plaintiff was unable to keep all of his legal materials in his cell because of prison rules that limit the amount of personal property an inmate may keep in his cell; however, plaintiff had access to his legal property in storage upon request, whereupon he could review and exchange the stored papers with those in his possession.  Opp., p. 6, Exh. 25. Exhibit 20 is a log of inmate access to legal property in R& R (see Sanchez Dec., ¶ 13) which indicates that plaintiff, beginning on 3/9/05, did access his legal papers stored outside of his cell several times since his arrival at PVSP.  Id.  Therefore, defendants argue, plaintiff has failed to present evidence showing that he was deprived of the ability to access his legal papers, or that any such delay impaired his ability to litigate his cases.  Opp., p. 6.

With regard to plaintiff's claim that he was prevented from notifying the courts of his change of address, defendants submit exhibits showing that, rather than the 20 minutes he avers that he was in the law library on 2/18/05, he was in for 35 minutes; he was also in for two hours on 2/23/05; an hour and a half on 2/25/05, and regularly thereafter until around the time of defendants' filing.  Opp., p. 7, Sanchez Dec.. ¶ 7; Exh. 19, inmate library logs from 2/18/05 through 6/25/05.  Plaintiff's contention that he was refused the right to send a change of address to the courts absent proof of any other pending court cases and was unable to provide such proof because he could not access his legal property due to the putative adverse transfer is belied, say

---

[4] Defendants incorrectly identify Assoc. Warden Crawford as being employed at PVSP.

defendants, by the fact that he never submitted a grievance at PVSP concerning this issue. Opp., p. 7, Sanchez Dec., ¶ 5 showing Exhs. 10-12 to be the only grievances submitted at PVSP by plaintiff, none of which specifically address the change of address notification issue. Exhibit 13 shows that plaintiff had access to two boxes of his legal property on 2/11/05; Exhibit 20 shows he accessed his property on 3/9/05 (the remainder of his personal and legal property having been received by plaintiff on 2/25/05). Opp., p. 7. In addition, the log of legal mail sent by plaintiff reveals that he sent mail to the district courts in Sacramento and Los Angeles, and the superior courts in Fairfield and San Bernardino before 3/15/05. Opp., p. 7, Exh. 23.

Further, defendant maintains that by the time plaintiff filed his 4/6/05 motion for protective order, plaintiff, who represents that he did not receive his personal property until 3/15/05 should have been able to identify the specific cases for which he was precluded from informing those courts as to his change of address; his failure to do so suggests that there are no such instances. Opp., p. 7. This court has already noted that, in the instant case, plaintiff filed two notices of address change, one on 2/16/05 and another on 2/25/05.

Defendants observe that in Central District Case No. 02-1124,CBM RC, one of three federal actions plaintiff has pending (of which the instant case is one), that he filed a notice of address change on 2/28/05 (docket entry # 108).[5] Opp., p. 8, Exh. 27. As to the third federal case, USDC-ED Case No. 04-00406, plaintiff did not file a notice of change of address, apparently because plaintiff, as petitioner, appealed the district court's decision as of 9/24/04. Opp., p. 8, Exh. 32, docket entry # 23. Therefore, defendants contend that plaintiff's assertion that he was deprived of information needed to notify the court of his change of address is unsupported by the evidence, which shows that plaintiff did timely notify the courts in all of his active cases. Opp., pp. 8. Thus, plaintiff has failed to sufficiently allege harm nor has he presented evidence of harm. Id.

---

[5] The court has granted defendants' request for judicial notice of docket sheets of plaintiff's actions.

1         Defendant points out the disparity in plaintiff's request in that he seeks "mandatory" law library access of 14 hours weekly in one motion and six hours in the next. As to plaintiff's request that he have more access to paper and writing utensils, defendants point out, inter alia, that plaintiff did not submit a grievance at PVSP with respect to a lack of library access or writing supplies until 6/8/05, two months after filing his motion for a protective order. Opp., p. 10, Exh. 12. The record shows that the appeal was rejected and returned to plaintiff because he had failed to attempt to resolve his grievance at the informal level – a standard prerequisite to a formal response. Opp., p. 10, Exh. 12, p. 3.

        The docket reports for the three federal court cases the plaintiff has or had pending do not reveal any impending deadlines at that time. Opp, p. 10, Exhs, 26, 27 and 32. According to PVSP's policy, all inmates shall have access to the law library, but priority is given to those inmates who have verifiable 30-day court deadlines. Opp., p. 9, Exh. 24. Defendants aver that at PVSP, plaintiff has made only two requests for priority use of the law library, one of which was approved, while the other was not, as plaintiff did not have a 30-day deadline. Exhs. 15-16. A ducat is not required for non-priority visits to the law library. Opp, p. 9.

        Even though plaintiff had no pending deadlines in his federal cases, he filed motions in this case. In addition, plaintiff was able to file a 2/28/05 motion for a TRO like the one filed on 3/2/05 in this case, in Case No. CIV-02-1124, which was denied for plaintiff's (petitioner therein) failure to demonstrate actual injury. Opp., p. 10, Exh. 27, docket entry #'s 104 & 106, Exh. 29, 3/28/05[6] order in Case No. CIV-02-1124.

        As to plaintiff's complaint that he has not received adequate writing supplies, defendants state that logs maintained by law library staff at PVSP indicate that plaintiff has not only regularly accessed the law library, but has received paper and envelopes, and mailed and received numerous letters to and from various courts. Opp., p. 9, Exhs. 17-23. Moreover, while

---

[6] Defendants erroneously state the date of the order as 5/9/05.

10

at CMF, plaintiff was informed that he could request writing paper from his wing officer. Opp., p. 9, Exh. 7, second level response, p. 1. At PVSP; the building officer where plaintiff is housed would provide paper to plaintiff to litigate his cases, but, according to defendants, plaintiff has never made a request for paper of the building officer. Opp., p. 10. A.L. Sandoval, plaintiff's building officer, states, in a declaration signed on July 12, 2005, submitted under penalty of perjury in support of the opposition, that he maintains writing paper for use by inmates for legal matters, that he has never refused a legitimate request and the plaintiff has never requested writing paper from him. Sandoval Dec., at ¶¶ 2-5.[7] Defendants conclude that plaintiff has not come close to meeting his burden as to his pending motions. Opp., p. 11.

Reply

Plaintiff maintains that his transfer from CMF to PVSP was in retaliation for filing grievances and that staff at both CMF and PVSP have hindered his law library access and refused to provide him with paper and pens. Reply, p. 2. In an effort to support his claim that his transfer was retaliatory, plaintiff includes a copy of his UCC annual review report, dated 1/5/05, wherein the next annual review is indicated as being 1/6/06, and a copy of the classification committee's action on 1/21/05, wherein plaintiff was to be recommended for transfer to PVSP. Reply, pp. 4-5, Exhs. 1 & 2. Plaintiff's Exh. 1, the 1/5/05 UCC annual review report, does counter defendants' claim that his allegation that the classification committee recommended his transfer two weeks after his yearly classification establishing his program for the year is "unfounded." See, Opp., p. 4. Plaintiff also states that CCI Rhoads interviewed him (apparently a staffmember at PVSP) and stated that he could not understand why plaintiff had been transferred, saying, in plaintiff's words, "you must have wrote [sic] the wrong person up" or

\\\\\

---

[7] The court notes that C/O Sandoval makes this declaration, although plaintiff in his 4/6/05 motion for protective order states that he contacted Sandoval on 3/2/05 about his problems with obtaining adequate supplies and was referred by him to R&R. See PO mtn., p. 2.

11

"must have 602ed the wrong person."  Reply, p. 5, Exh. 4.[8]  Plaintiff's Exhibit 4 is not an affidavit by Rhoads but a declaration by plaintiff that Rhoads said this to him.

Plaintiff claims that the pen he is using (to write his reply) is the last that he has and is leaking and that the pink paper on which he writes is the last of the paper he can get from C/O Sandoval.  Plaintiff includes exhibits which appear to be affidavits from three other inmates stating that they have been provided with pink paper only, not legal paper.  He claims that not being granted an order for law library access and writing supplies will preclude him from filing any complaints "without breaking the law to gain the materials needed to litigate his claims." Reply, p. 3.

Plaintiff re-asserts that he did not receive access to his legal papers until 3/15/05 (reply, p. 6), although he does not set forth how he was in any way thereby jeopardized in prosecuting his various actions.  Plaintiff makes vague references to needing "to resort to violating the rules and committing crimes in order to avoid [missing] court deadlines...."  Reply, pp. 6-7.  Apparently, plaintiff has to "barter" for materials to address the courts.  Reply, p. 7. Plaintiff states in a declaration that he has "to resort to unsavory and illegal behavior to gain finances to purchase paper and writing materials from other prisoners...." Reply, Exh. E.  He does not clarify what such behavior is or why he cannot make do with the pink paper which he has obtained from C/O Sandoval, since this court has not objected to the paper he has used in his filings.  Moreover, once again, plaintiff fails to identify what deadlines he was in danger of missing, nor does he identify any case wherein he has been impeded.  He makes a vague reference to AEDPA deadlines, a statute that is wholly irrelevant to the instant case.  Reply, p. 7. Plaintiff includes as an exhibit a modified library schedule for July 5-9, 2005, which indicates library closure for that period.

\\\\\

---

[8] Plaintiff incorrectly references Exh. 3 as the supporting affidavit; Exh. 3 is a notice of classification hearing.

Finally, on August 12, 2005, plaintiff filed a "notice" that he was being hindered by the CDC by not being given access to the courts. Plaintiff states laconically: "This institution is not giving me access to the courts. I am not able to file the motions to court standards, and this notice is to inform the courts that I am being diligent in this matter." Plaintiff's vagueness does not lend itself to any relief this court could order. He does not identify what motions he is being precluded from filing, nor how he is being "hindered" from doing so in any specific matter.

Discussion

The court construes plaintiff's motions and request to be a motion for a protective order. As has been noted in a prior order, filed on February 23, 2005,[9] matters that go to requests for procedures to be utilized within a litigation (if the requests are directed to a party) are not injunctive relief requests. Matters appropriate for injunctive relief go to the *merits* of an action. State of New York v. United States Metals Refining Co., 771 F.2d 796, 801 (3rd Cir. 1985). Plaintiff's requests for a court order for law library access and for legal supplies for purposes of litigating his various cases do not go to the merits of the instant complaint.[10]

Local Rule 72-302 of the Eastern District of California permits magistrate judges to handle all aspects of a prisoner's case short of jury trial. It has also been interpreted as authorizing magistrate judges to issue orders under § 636(b)(1)(A) for non-dispositive motions or motions not involving injunctive relief. See also United States v. Raddatz, 447 U.S. 667, 673, 100 S. Ct. 2406, 2411 (1980) (magistrate judge may determine any pretrial matter except "dispositive" motions). Therefore, the fact that parties are directed in their activities by a magistrate judge cannot, without more, transform the matter at hand into an "injunctive" relief matter governed by § 636(b)(1)(B). See, e.g., Grimes v. City and County of San Francisco, 951

---

[9] As to that motion for a TRO, construed as a motion for a protective order, plaintiff's request for the court to stay his transfer to another facility was denied.

[10] This action proceeds on plaintiff's claim that his constitutional rights were violated when his mail was confiscated.

1  F.2d 236 (9th Cir. 1991) (magistrate judge may compel a party to pay prospective sanctions of
2  $500.00 per day during period of non-compliance with discovery orders to ensure compliance).
3  It is only when the "injunctive" relief sought goes to the merits of plaintiff's actions or to
4  complete stays of an action that orders under § 636(b)(1)(A) are precluded.  See, e.g., Reynaga v.
5  Cammisa, 971 F.2d 414 (9th Cir. 1992).

6  　　　　　As plaintiff's request does not go to the merits of plaintiff's action, this matter
7  may be handled by court order.  Plaintiff does not state that he is being impeded from the filing
8  of any specific motion or response to a motion in the instant case, the only one pending over
9  which this court has jurisdiction.  Plaintiff does not identify a motion or filing he seeks to make
10 or has sought to make in this case from which he is being, or has been, impeded at PVSP.
11 Defendants have demonstrated that plaintiff has been granted reasonably regular access to the
12 law library.  Although there are some discrepancies, for example, as to when plaintiff first
13 approached C/O Sandoval for writing paper and plaintiff continues to maintain that he is being
14 denied access to writing supplies, nevertheless, even after he claims he had no further access to
15 pen and paper (on 8/8/05), he filed another document (on 8/12/05).  Plaintiff's showing that he
16 was subject to a retaliatory transfer, supported largely by his own assessment of classification
17 committee irregularities, and by hearsay, is not simply insufficient but irrelevant to whether or
18 not he is being afforded adequate access to the courts while at PVSP.  He has not demonstrated
19 that, for the purposes of prosecuting this action, he is currently suffering from impediments at
20 PVSP such that he cannot go forward.  His shadowy, vaguely threatening references to resorting
21 to illegal or unsavory tactics to prosecute the instant action appear wholly unjustified.

22 　　　　　Plaintiff has not met his burden to show that he is being denied access to the
23 courts in having wholly failed to allege an actual injury.  Lewis v. Casey, 518 U.S. 343, 362, 116
24 S. Ct. 2174 (1996).  The Supreme Court has held that a prisoner alleging denial of meaningful
25 access to the courts must "demonstrate that the alleged shortcomings in the library or legal
26 assistance program hindered his efforts to pursue a legal claim."  Lewis v. Casey, 518 U.S. 343,

116 S. Ct. 2174, 2180 (1996). To show a denial of access to the courts claim that might warrant a protective order, plaintiff must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. Plaintiff has simply made an inadequate showing that in this case, he is being precluded or thwarted in his efforts to proceed. His initial request for receipt of his personal property has been mooted by his receipt of such property, by his own concession on 3/15/05, although records indicate he received all of his personal and legal property at PVSP earlier, that is, by 2/25/05. His request for an order granting him, apparently indefinitely, law library access for either six or 14 hours a week, particularly in light of the fact that under prison rules he will be granted Priority Legal User (PLU) status upon his showing that he has a pending 30-day court deadline, is unreasonable, unnecessary and overbroad, as is his request that the court issue an order applicable not only to PVSP, but also to any other facility to which he may be transferred, directing that he be issued legal materials to pursue his litigation, including pens, paper, postage, white out, "a fully functional typewriter and photocopies" for as long as he is an inmate and indigent. Despite his complaints that he is not being granted adequate paper and pen supplies, he has yet to demonstrate an inability to file motions/requests or responses in this case. Moreover, he has not shown, should he encounter difficulty in filing a motion in this action, or in responding to a filing by defendants, that he would be unable to obtain an extension of time from this court for any such filing or response. In short, plaintiff fails to allege an actual injury sufficient to warrant intervention by this court in the form of a protective order.

      Accordingly, IT IS ORDERED that:

      1. Defendants' July 13, 2005 request for judicial notice is granted;

      2. Defendants' July 18, 2005 unopposed motion to amend/correct exhibits to their opposition is granted; and

\\\\\

\\\\\

\\\\\

3. Plaintiff's motion for a temporary restraining order (TRO), filed on March 2, 2005, his motion for a protective order, filed on April 6, 2005, and his request for an order of protection "from the hindering practices of the California Department of Corrections," filed on July 8, 2005, all construed as motions for a protective order, are denied.

DATED: 1/9/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
gord2474.prt