1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANTHONY GORDON,

11              Plaintiff,                No. CIV S-02-2454 GEB GGH P

12        vs.

13   ANNA M. RAMIREZ-PALMER,
     Warden, et al.,                      <u>ORDER</u> &
14
                Defendants.               <u>FINDINGS AND RECOMMENDATIONS</u>
15
     _____/
16

17   <u>Introduction</u>

18              Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. §

19   1983.  Pending before the court are: 1) defendants' motion for summary judgment, filed on

20   December 30, 2006, to which plaintiff filed an opposition, after which defendants filed a reply;

21   2) plaintiff's January 23, 2006, motion for a temporary restraining order (TRO); and 3) plaintiff's

22   request for leave to serve additional interrogatories, filed on January 23, 2006.

23   <u>Motion for TRO</u>

24              Plaintiff has filed a wholly inadequate request for greater access to legal materials

25   and to the law library.  He states very briefly that the library is open three days a week for four

26   hours a day and seeks eight hours of law library access "to research and prepare motions and

                                            1

other pleadings."  Plaintiff does not provide any further clarification of his request; he does not

state how much time he has been allowed, nor does he provide any documentation to indicate

that he has somehow been limited in his access to the law library.  On the very day he filed this

putative motion for a TRO, which the court construes as a motion for a protective order, plaintiff

filed no less than twelve other separate documents, according to the court's docket, including an

opposition to a motion for summary judgment.

      The court construes plaintiff's motion as a request for a protective order.  As has

been noted in prior orders, filed on February 23, 2005,[1] and on January 9, 2005,[2] matters that go

to requests for procedures to be utilized within a litigation (if the requests are directed to a party)

are not injunctive relief requests.  Matters appropriate for injunctive relief go to the *merits* of an

action.  State of New York v. United States Metals Refining Co., 771 F.2d 796, 801 (3rd Cir.

1985).  Plaintiff's requests for a court order for law library access and for legal material for

purposes of litigating this case do not go to the merits of the instant complaint.[3]

      Local Rule 72-302 of the Eastern District of California permits magistrate judges

to handle all aspects of a prisoner's case short of jury trial.  It has also been interpreted as

authorizing magistrate judges to issue orders under § 636(b)(1)(A) for non-dispositive motions or

motions not involving injunctive relief.  See also United States v. Raddatz, 447 U.S. 667, 673,

100 S. Ct. 2406, 2411 (1980) (magistrate judge may determine any pretrial matter except

"dispositive" motions).  Therefore, the fact that parties are directed in their activities by a

magistrate judge cannot, without more, transform the matter at hand into an "injunctive" relief

matter governed by § 636(b)(1)(B).  See, e.g., Grimes v. City and County of San Francisco, 951

---

[1] As to that motion for a TRO, construed as a motion for a protective order, plaintiff's request for the court to stay his transfer to another facility was denied.

[2] In that order, plaintiff's requests seeking, inter alia, mandatory law library access were denied.

[3] This action proceeds on plaintiff's claim that his constitutional rights were violated when his mail was confiscated.

1  F.2d 236 (9th Cir. 1991) (magistrate judge may compel a party to pay prospective sanctions of

2  $500.00 per day during period of non-compliance with discovery orders to ensure compliance).

3  It is only when the "injunctive" relief sought goes to the merits of plaintiff's actions or to

4  complete stays of an action that orders under § 636(b)(1)(A) are precluded.  See, e.g., Reynaga v.

5  Cammisa, 971 F.2d 414 (9th Cir. 1992).

6          As plaintiff's request does not go to the merits of plaintiff's action, this matter

7  may be handled by court order.  Plaintiff does not state that he is being impeded from the filing

8  of any specific motion or response to a motion in the instant case and in light of the vast quantity

9  of documents filed simultaneously with this protective order request, he can hardly do so.  He

10  does not allege that he is being impeded from having regular access to the law library.  He fails in

11  any way to demonstrate that, for the purposes of prosecuting this action, he is currently suffering

12  from any impediment.

13          As before, plaintiff has not met his burden to show that he is being denied access

14  to the courts in having wholly failed to allege an actual injury.  Lewis v. Casey, 518 U.S. 343,

15  362, 116 S. Ct. 2174 (1996).   The Supreme Court has held that a prisoner alleging denial of

16  meaningful access to the courts must "demonstrate that the alleged shortcomings in the library or

17  legal assistance program hindered his efforts to pursue a legal claim."  Lewis v. Casey, 518 U.S.

18  343, 116 S. Ct. 2174, 2180 (1996).  To show a denial of access to the courts claim that might

19  warrant a protective order, plaintiff must "demonstrate that a nonfrivolous legal claim had been

20  frustrated or was being impeded."  Id.   Plaintiff has simply made an inadequate showing that, in

21  this case, he is being precluded or thwarted in his efforts to proceed.  In short, plaintiff fails to

22  allege an actual injury sufficient to warrant intervention by this court in the form of a protective

23  order.   The court will deny plaintiff's insufficiently founded request.

24  Motion to Serve Additional Discovery

25          Plaintiff's motion to serve additional interrogatories is untimely, as well as failing

26  to identify within the motion with adequate specificity the additional questions for which he

1  seeks answers.  In addition, plaintiff has failed even to seek an extension of time or to provide

2  any basis for the court to consider any such extension.

3          In the original scheduling order, issued on January 20, 2005, the deadline for

4  completion of discovery was set for May 5, 2005.  On May 13, 2005, the court granted

5  defendants' request for a modification of the scheduling order, due to a medical quarantine of

6  plaintiff (and other inmates) at the prison where he was incarcerated, resulting in defendants'

7  noticed deposition of plaintiff having been canceled.  See defendants' request to modify the

8  schedule, filed on May 10, 2005.  In that modification order, the court extended the discovery

9  deadline solely for the purpose of allowing defendants to take plaintiff's deposition, until either

10  August 31, 2005, or until one month after the quarantine was terminated.  While the deadline for

11  the filing of dispositive motions was extended, as were the dates for the pretrial conference and

12  the jury trial, the deadline for the filing of motions related to discovery was not.  Plaintiff's

13  deposition was taken on August 23, 2005.[4]  Even had the parties inferred, despite the explicit

14  omission of any other extension of time for discovery in the scheduling modification order, that

15  the filing deadline with regard to discovery was extended until thirty days beyond the taking of

16  plaintiff's delayed deposition, any such unauthorized deadline would not have reasonably

17  extended beyond September 30, 2005.  Defendants' timely motion for summary judgment was

18  filed on December 30, 2006, one day before the time for doing so expired, as extended in the

19  May 13, 2005, order.   Plaintiff's motion for leave to serve additional interrogatories, filed on

20  January 23, 2006, is denied as untimely.

21  Amended Complaint

22          The court sets forth the allegations of the first amended complaint as they were

23  presented in the Findings and Recommendations, filed on June 30, 3004 and adopted by Order,

24  filed on August 25, 2004, and again in the court's Order, filed on January 9, 2006.  This action

25  ────────────────

26       [4] See Exhibit C to defendants' motion for summary judgment.

1  proceeds on an amended complaint, filed on January 30, 2003, against defendants Mail

2  Supervisor Nettleton and Warden Ramirez-Palmer.[5]  This action was originally filed on

3  November 8, 2002.  Plaintiff alleges that, on June 28, 2001, defendant Nettleton intercepted mail

4  sent to plaintiff, sending instead a disposition form disallowing the mail, which had sentimental

5  value for him.  First Amended Complaint (FAC), p. 5.  Plaintiff has no disciplinary matter

6  pending against him that might prompt such an action.  Defendant Nettleton has failed to follow

7  departmental policy as well as deprived plaintiff of his rights under the First, Fifth and

8  Fourteenth Amendments.[6]  Plaintiff seeks the return/replacement of the photo(s) at issue and

9  monetary damages.

10  Motion for Summary Judgment

11              *Legal Standard for Summary Judgment*

12              Summary judgment is appropriate when it is demonstrated that the standard set

13  forth in Fed. R. Civ. P. 56(c) is met.  "The judgment sought shall be rendered forthwith if . . .

14  there is no genuine issue as to any material fact, and . . .  the moving party is entitled to judgment

15  as a matter of law."  Fed. R. Civ. P. 56(c).

16              Under summary judgment practice, the moving party

17              always bears the initial responsibility of informing the district court
              of the basis for its motion, and identifying those portions of "the
18              pleadings, depositions, answers to interrogatories, and admissions
              on file, together with the affidavits, if any," which it believes
19              demonstrate the absence of a genuine issue of material fact.

20  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986).  "[W]here the

21

22              [5] The amended complaint was modified, dismissing unnamed staff as defendants, which
    dismissal encompassed plaintiff's putative claim to a denial of his right of access to the courts.
23  See Order, filed on April 2, 2004, p. 3, and Findings and Recommendations, filed on August 18,
    2003, adopted by Order filed on September 17, 2003.
24
              [6] Plaintiff goes on to allege that unnamed staff have deprived him of access to the courts
25  during lockdowns and "fog courts" but, as noted, these unspecified defendants have been
    dismissed from this action.  See also, Findings and Recommendations, filed on June 30, 2004, n.
26  4, adopted by Order, filed on August 25, 2004.

1    nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

2    judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

3    to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

4    after adequate time for discovery and upon motion, against a party who fails to make a showing

5    sufficient to establish the existence of an element essential to that party's case, and on which that

6    party will bear the burden of proof at trial.  See id. at 322, 106 S. Ct. at 2552.  "[A] complete

7    failure of proof concerning an essential element of the nonmoving party's case necessarily

8    renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be

9    granted, "so long as whatever is before the district court demonstrates that the standard for entry

10   of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323, 106 S. Ct. at 2553.

11            If the moving party meets its initial responsibility, the burden then shifts to the

12   opposing party to establish that a genuine issue as to any material fact actually does exist.  See

13   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356

14   (1986).  In attempting to establish the existence of this factual dispute, the opposing party may

15   not rely upon the allegations or denials of its pleadings but is required to tender evidence of

16   specific facts in the form of affidavits, and/or admissible discovery material, in support of its

17   contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11,

18   106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is

19   material, i.e., a fact that might affect the outcome of the suit under the governing law, see

20   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec.

21   Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the

22   dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

23   nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

24            In the endeavor to establish the existence of a factual dispute, the opposing party

25   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

26   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

6

1  versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

2  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

3  genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P.

4  56(e) advisory committee's note on 1963 amendments).

5         In resolving the summary judgment motion, the court examines the pleadings,

6  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

7  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

8  477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts

9  placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S.

10  at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the

11  opposing party's obligation to produce a factual predicate from which the inference may be

12  drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

13  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing

14  party "must do more than simply show that there is some metaphysical doubt as to the material

15  facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the

16  nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S.Ct.

17  1356 (citation omitted).

18         On September 18, 2003, the court advised plaintiff of the requirements for

19  opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v.

20  Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and

21  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

22         *Motion*

23         Defendants move for summary judgment on the following grounds: 1) plaintiff's

24  allegations do not concern defendant Ramirez-Palmer; 2) plaintiff cannot support a cause of

25  action against defendant Nettleton as a matter of law; 3) defendants are entitled to qualified

26  immunity.  Motion for Summary Judgment (MSJ), p. 3.

1    The following facts are undisputed (defendants' separate statement of undisputed

2    facts in support of defendants' motion for summary judgment (DSSUF)): plaintiff is a state

3    prisoner, who at all times relevant to this action, was in the custody of the California Department

4    of Corrections and Rehabilitation (CDCR) at California Medical Facility (CMF)-Vacaville.

5    DSSUF # 1.  During the time relevant for this action, defendant Ramirez-Palmer was employed

6    by CDCR as CMF's warden.  DSSUF # 2.  Defendant Nettleton, at the time relevant for this

7    action, was employed by CDCR as a correctional officer at CMF, whose duties involved

8    inspecting inmate mail pursuant to Title 15 of the California Code of Regulations.  DSSUF #'s 4

9    & 5.  All incoming packages and mail addressed to an inmate were opened and inspected before

10   delivery.   The purpose of the inspection was to prevent inmates from receiving contraband as

11   well as to record the receipt of permitted personal property.  DSSUF # 6.  If contraband was

12   discovered, the item was confiscated and the inmate was properly notified.  Furthermore, the

13   inmate was advised that he must direct mailroom staff regarding the disposition of the property

14   within 15 days.  DSSUF # 7.  Because inmates were not allowed to promote, further, or assist any

15   gang, an inmates' possession of photographs which contain gang-related activity was prohibited,

16   and such photographs were treated as contraband.  DSSUF # 8.  On or about June 28, 2001,

17   defendant Nettleton authorized the withholding of three photographs mailed to plaintiff because

18   he deemed them to contain gang-related activity.  DSSUF # 9.  On June 28, 2001, plaintiff

19   received a mail disposition form, indicating that three photographs were being withheld because

20   they contained gang related activity.  Plaintiff was instructed to advise the mailroom staff, within

21   15 days, whether he wanted the pictures destroyed or mailed to someone, the bottom of the form

22   expressly stating: "NOTE: All mail disposition forms not returned to mailroom within 15 days

23   from the date of notice will result in mail being destroyed."  DSSUF # 10. Plaintiff knew the

24   photos would be destroyed after 15 days.  DSSUF # 11.  Plaintiff's last day to respond to the mail

25   disposition form was July 13, 2001.  DSSUF # 12.  On August 22, 2001, plaintiff submitted a

26   grievance to Correctional Officer (C/O) Rick Forester, regarding the photos.  In the grievance,

1   plaintiff claims that he previously sent a grievance to defendant Nettleton on June 29, 2001.

2   DSSUF # 13.  Plaintiff has never seen the photographs.  DSSUF # 16.  Plaintiff is aware that

3   CDCR has a policy to pay for the loss or destruction of inmate personal property, pursuant to

4   CAL. CODE REGS. tit.xv, § 3193.[7]  DSSUF # 17.

5       *Opposition*

6       By his opposition, plaintiff disputes the following facts set forth by defendants as

7   undisputed: that his allegations with respect to defendant Ramirez-Palmer are not related to the

8   disposal of his photographs (DSSUF # 3); he also disputes that defendant Nettleton never

9   received a grievance from plaintiff on any matter (DSSUF # 14) and refutes the implication that

10  he (plaintiff) did not send back a completed mail disposition form to Nettleton when Nettleton

11  says that he did not receive the completed form back from plaintiff indicating plaintiff's

12  preference for disposition of the photos (DSSUF # 15).  (In addition, plaintiff purports to dispute

13  DSSUF #'s 8, 11, and 16, but either provides an insufficient basis therefore, or fails to refute the

14  evidence of his own testimony, as discussed infra).  Opp., p. 6.

15      Plaintiff avers that he filed a 602 appeal on June 29, 2001, after defendant

16  Nettleton had authorized the withholding of a letter, legal materials, and three photos mailed to

17  _____

18      [7] CAL. CODE REGS. tit.xv, § 3193(b) sets forth as follows:

19          "The department shall accept liability for the loss or destruction of
            inmate personal property when it is established that such loss or
20          destruction results from employee action. Inmates shall utilize the
            inmate appeal process if unable to resolve a personal property
21          claim pursuant to section 3084.1. Upon acceptance of liability, the
            department shall provide similar items of equal or greater value to
22          the inmate when such items are available via donated property
            items consistent with sections 3084.7(e) and 3191(c). If donated
23          items are not available, monetary compensation to the inmate for
            such loss shall not exceed either the dollar value assigned to the
24          item or items at the time the inmate received authorization to
            possess the property; the cost of the item, verified by receipt; or the
25          replacement value for the item or a similar item, as determined by
            the department. Staff recommendations to the Victim
26          Compensation and Government Claims Board regarding monetary
            reimbursement will be made accordingly."

1   plaintiff on June 28, 2001.  Opp., p. 3.  Plaintiff also contends that he had C/O Hughes contact

2   defendant Nettleton by phone in June, 2001, and that he submitted numerous request forms to

3   speak to Nettleton (which he does not date), which went unanswered; he also asserts that he

4   responded to the mail disposition form on July 13, 2001.  Id. & Exh. 3, plaintiff's declaration.

5   The court takes judicial notice[8] that in its June 30, 2004, Findings and Recommendations,[9] p. 5,

6   adopted by Order filed on August 25, 2004, the undersigned noted that a copy of a 602 inmate

7   appeal form signed by plaintiff and dated June 29, 2001, a day after plaintiff's receipt of the mail

8   disposition form, contained no log number or any other indication that it was ever processed and

9   that plaintiff also averred that not only did he send the 602 timely but also had officers call the

10  mail room about the incident at issue.  Both defendants and plaintiff also include a copy of the

11  unlogged June 29, 2001, 602 inmate appeal as an exhibit to the motion and opposition herein.

12  MSJ, Exh. E , p. 2; Opp., Exh. 1, p. 4.

13          In his current opposition to the summary judgment motion, when plaintiff was

14  notified that Rick Forester was in charge of the mail room, he states that he sent several inmate

15  requests for an interview to Forester and received a ducat for an interview in July, 2001.  Opp., p.

16  3.  He asserts, however, incorrectly as far as this action is concerned, that he filed a petition in the

17  court in July, 2001, in order to obtain an order preventing defendants from destroying his mail

18  and pictures.  Nor does plaintiff declaring that he filed such a petition in this court on that date

19  make it so.[10]  See, Opp., Exh. 3, plaintiff's declaration.  In the exhibits to his opposition, plaintiff

20  ─────────────────

21          [8] Judicial notice may be taken of court records.  Valerio v. Boise Cascade Corp., 80
    F.R.D. 626, 635 n.1 (N.D. Cal. 1978), aff'd, 645 F.2d 699 (9th Cir.), cert. denied, 454 U.S. 1126
22  (1981).

23          [9] The court, therein, adjudicated defendants' motion to dismiss for failure to exhaust
    administrative remedies.

24          [10] Plaintiff filed a "petition," in the instant action, file-stamped November 8, 2002, many
    months after the incident at issue and after the photos had apparently been disposed of, alleging
25  generally that Vacaville State Prison staff failed to allow him access to the courts.  This court's
    present review of the initial filing indicates that plaintiff did include a vague allegation that
26  defendant Nettleton had disallowed plaintiff's mail on or about June 28, 2001, in contravention

10

1   includes in addition to the June 29, 2001, appeal, copies of an inmate request for interview, dated

2   9/26/01; copies of an inmate appeal rejection form, dated both 9/21/01 and 9/28/01, with the

3   comment from appeals coordinator M. Cry, that an appeal about mail is processed automatically

4   to the second level "per OP 47" and CAL. CODE REGS. tit.xv, § 3084 and should have been

5   forwarded to Cry's office "immediately" and not three months later.  Opp., Exh. 1, pp. 1-2.

6   Plaintiff's undated request for interview, in apparent response to the rejection, states that he sent

7   in an appeal (the June 29, 2001, unprocessed appeal) as soon as he received the mail disposition

8   form and, when he did not receive the 602 back, sent an inmate request for interview which "can

9   be verified through the ducats."  Id., p. 3.  Plaintiff includes another request for interview, dated

10  12/10/02, stating that he had sent in an appeal dated 11/06/02 to which no response has been

11  forthcoming; plaintiff does not include a copy of that appeal.  Id., p. 5.  Plaintiff includes an

12  undated copy of a rejection of an appeal, indicating that plaintiff had failed to first resolve the

13  matter informally; it is not made clear that this was a form returned with respect to the June 29,

14  2001, appeal.  The other appeal or grievance form copies plaintiff includes are dated in the year

15  2004, and are therefore irrelevant to the gravamen of this action.  Moreover, of the exhibits he

16  has provided, only the June 29, 2001, appeal would have been a timely response to the mail

17  disposition form.  Even the August 22, 2001, appeal defendants submit (MSJ, Exh. E, p. 1),

18  which plaintiff sent to Rick Forester, references a conversation with him on August 4, 2001,

19  concerning his mail, which itself is a date beyond the 15 days that plaintiff was notified within

20  which to respond.  He does refer to the June 29, 2001, grievance to defendant Nettleton to which

21  he avers Nettleton refused to respond, but that is a separate issue from whether or not his August

22  22, 2001, appeal could have been timely, which plainly, standing alone it could not have.

23  \\\\\

24  _____

25  of departmental policy.  The filing was signed by plaintiff and dated November 3, 2002, which
    even by application of the mailbox rule, comes nowhere near to being July, 2001.  The "petition"
    was properly construed as an action under 42 U.S.C. § 1983, and was dismissed with leave

26  granted to file an amended complaint.  See Order, filed on January 22, 2003.

1    Plaintiff has also submitted, as part of his opposition to the motion for summary

2    judgment his objections to defendants' discovery responses, in an effort to demonstrate that

3    defendants' apparent evasiveness[11] militates for a finding that defendants are not forthcoming as

4    to the timing of his appeals or attempted entreaties to defendant Nettleton, entitled respectively,

5    "Opposition to defendant Nettleton's response to plaintiff's first set of interrogatories,"

6    "Opposition to defendants' response to plaintiff's first request for production of documents,"

7    "Opposition to defendant Nettleton's response to plaintiff's first request [sic] for admissions,"

8    "Opposition to defendant Nettleton's response to plaintiff's first set [sic] of admissions," and a

9    repeated "Opposition to defendant Nettleton's response to plaintiff's first set of

10    interrogatories."[12]   The difficulty in submitting these "oppositions" or objections to defendants'

11    discovery responses is that plaintiff does not fully set forth the requests nor are the requests

12    always coherent.  For example, without including request nos. 1, 2, or 3, the

13    responses/production to which he evidently did not an objection, plaintiff seeks, in request for

14    production no. 4:

15              Copies of any and all documents other than those described in
              request no. 1 and 2, and 3 which contain, mention or discuss
16              previous request or information by any employee's [sic]
              concerning handling of plaintiff's mail.

17

18    Defendant objected to this request, according to plaintiff, on the grounds of, inter alia,

19    incomprehensibility, a characterization that is not without foundation on the face of it.  On the

20    other hand, when plaintiff in his first set of requests for admissions asked defendant Nettleton to

21    admit, among other things, that he had received the June 29, 2001, 602 appeal, plaintiff sets forth

22    the relevant portion of the response:

23    \\\\\

24    _____

25    [11] Plaintiff did not file any motion to compel discovery.

26    [12] Neither of his "oppositions" to responses to his first set of interrogatories set forth
either any interrogatories or the responses thereto.

Defendant Nettleton does not recall whether he received an inmate appeal from plaintiff, he does not have possession, custody, or control of any documents that refresh his recollection, and he is therefore unable to admit or deny that part of this request for admission.

Similarly, in his responses to requests for admission nos. 2 and 3, when plaintiff seeks an admission that defendant Nettleton received a phone call from an Officer Hughes regarding plaintiff in July 2001, (a request which suffers from some vagueness), according to plaintiff,[13] and when plaintiff asks Nettleton to admit that, on August 4, 2001, mail room staff member Rick Foster (identified elsewhere as "Forester") contacted him concerning plaintiff's 602 and the mail disposition form, Nettleton issues neither a forthright denial or an admission, but claims no recollection.  Notwithstanding his faulty recollection as to these points, defendant Nettleton is evidently sufficiently confident with respect to a request for admission (no. 5), asking him to admit that he refused to answer the alleged June 29, 2001, 602 appeal from plaintiff that he is able to deny straightforwardly that he refused to answer an appeal from plaintiff.  Moreover, in his affidavit, while defendant Nettleton declares that he did not receive the mail disposition form setting forth his preference as to the disposition of the photos, nor did he ever receive a 602 appeal from plaintiff with respect to any matter, he makes no reference whatever to whether or not any officers communicated with him with respect to this matter.   In the reply to plaintiff's opposition wherein plaintiff references claims to have made, in addition to the unlogged appeal, numerous requests for interviews and attempts to contact defendant through officers (Forester) & (), while defendant argues that there is no evidence that plaintiff contacted Nettleton before the photographs were destroyed, Nettleton does not take the opportunity to unequivocally declare that he was never contacted or otherwise made aware of plaintiff's efforts to communicate with him in the time prior to the disposition of the photos.

\\\\\

---

[13] Because plaintiff does not include the actual response, but has apparently copied the responses by hand, the court is unable to discern the ultimate accuracy of his submissions.

1      *Discussion*

2      Defendant Ramirez-Palmer

3      Defendants contend that plaintiff does not have standing to allege an injury as to

4 defendant Ramirez-Palmer, as his allegations with respect to the disposal of his photographs do

5 not concern her, thus he is unable to allege an injury he suffered in relation to her conduct.  MSJ,

6 pp. 5-6.  Plaintiff, however, argues in his opposition that both defendants Nettleton and Ramirez-

7 Palmer failed to follow departmental policies, depriving him of his constitutional rights under the

8 First, Fifth and Fourteenth Amendments in the manner of the disposal of the photos.  Opp., p. 2.

9 The problem for plaintiff is that in his deposition response with respect to his claim against

10 defendant Ramirez-Palmer, he denies that his allegations against her relate to the only claim

11 remaining in this action – the claim relating to his confiscated mail.  See MSJ, Exh. C, plaintiff's

12 deposition, 31:19 -32:19:

13          Q.  Because  - - so the reason that Ana Ramirez-Palmer is named in
           the Complaint as a defendant is not related to the holding of the
14         mail?
           A.  No.
15         Q.  It's related to your alleged access - - denial of access to court?
           A.  Correct.
16         Q.  And one is for alleged denial of access to court due to
           lockdowns and fog counts; right?
17         A.  Correct.
           Q.  And the - - of the two defendants, Defendant Nettleton is only
18         related to the claim regarding the mail.
           A.  Correct.
19         Q.  Nettleton has nothing to do with your denial of access to
           courts?
20         A.  No, he doesn't. Not that I know of, no.
           Q.  And you're not alleging anything in your Complaint against
21         Nettleton on that claim, right?
           A.  No.
22         Q.  And the only claim against Ramirez-Palmer has to do with the
           alleged denial of access to court?
23         A.  Correct.
           Q.  All right.  Ramirez-Palmer is not involved with the mail?
24         A.  No, not that I know of, no.

25         As has been noted above, plaintiff's denial of access to the courts claim was

26 dismissed and plaintiff has been proceeding only as to his allegations regarding the confiscation

1  of his mail.  To the extent plaintiff ever intended to proceed on this claim against defendant

2  Ramirez-Palmer, whether construed as an abandonment of any such allegation against this

3  defendant or clarifying that he never intended to implicate Ramirez-Palmer in his mail

4  confiscation claim, his sworn deposition testimony is sufficiently unequivocal that that claim

5  relates only to defendant Nettleton.

6          While plaintiff attempts to resurrect the claim with respect to Ramirez-Palmer in

7  his opposition, he provides no foundation for reviving the allegation with respect to this

8  defendant, nor does he explain the evidence of his own testimony against the allegation.  Reply,

9  p. 5;  Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 806, 119 S. Ct. 197 (1999)

10 (party must do more than simply contradict his own previous sworn statement to survive

11 summary judgment).   In this case, plaintiff does not even acknowledge the contradiction.

12 Plaintiff has not met the burden, shifted to him in the face of defendants' evidence of plaintiff's

13 own deposition testimony, to defeat defendants' motion for summary judgment as to defendant

14 Ramirez-Palmer, and the court finds that, as to defendant Ramirez-Palmer, defendants are

15 entitled to summary judgment.

16          Defendant Nettleton

17          Although plaintiff submits no declaration, letter or statement from, for example,

18 C/O Hughes warranting that plaintiff did call Nettleton on plaintiff's behalf in June 2001,

19 nevertheless, as to defendant Nettleton, plaintiff has raised an issue of fact as to whether or not he

20 had any communication from any of the sources plaintiff has stated by which he sought to

21 contact Nettleton in a timely fashion about the photographs, a fact which defendant has simply

22 not adequately disputed.  On the other hand, what plaintiff has failed to demonstrate, by any

23 credible evidence, is precisely what the photographs were.  While he has set forth in his own

24 declaration (Opp., Exh. 3) that "plaintiff's wife sent him the letter, legal material and photo's

25 [sic]," such evidence is hearsay at best (given that he did not actually receive anything, he could

26 only have "known" what was sent to him if someone told him); he fails to submit any declaration

15

from her setting forth, under penalty of perjury, exactly what was contained in the package she

apparently sent.  In addition to failing to file a supporting affidavit other than his own, that is,

from a person who had actual knowledge of the contents at issue, plaintiff has not documented

any phone call or even provided any letter from the sender of the package at issue as to precisely

what photographs were in the package.  It is undisputed that plaintiff did not see the photographs;

it is undisputed that defendant Nettleton deemed them to be contraband and it is undisputed that

the photographs were destroyed or otherwise disposed of.  No proof beyond defendants' affidavit

(and the copy of the mail disposition form) exists as to what was pictured in the photographs.

The mail disposition form plaintiff received, signed by defendant Nettleton and dated 6/28/01,

had the following box checked: "Gang activity: 'Inmates and Parolees shall not knowingly

promote, further, or assist any gang.'  (Title 15, § 3023)."  The following notation is made by

hand on the form beside the checked line: "1 of 3 signs picture."  MSJ, Defendants' Exh. D.

Plaintiff has sworn under oath that he never saw the mail at issue, but is "only

going by what I was told of what was sent to me, of what I had requested was to be sent to me,"

including two pictures of his children and photos of his mother, the item of particular sentimental

value being any photo of his mother; he refers to his children as "still living," so that the loss of

those pictures did not concern him so much.  See defendants' Exh. C, plaintiff's dep., 13:16-25.

He reiterates that he has never seen the photographs at a later point, indicating that he does not

know precisely which children were pictured.  Id., 22:6-20.

Plaintiff is claiming that his First Amendment rights were violated because, in

essence, he is not a gang member or affiliated with a gang and the photographs were innocent

family photos.  Plaintiff has a First Amendment right to receive innocuous photographs of his

mother and children; however, if the photographs instead were, indeed, contraband, his

constitutional rights could not have been infringed, a point with which he does not take issue.

Under Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987), "when a prison regulation

impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to

1  legitimate penological interests."

2        As to his rights under the Fifth and Fourteenth Amendments, plaintiff is claiming

3  a violation of his constitutional due process rights by defendant Nettleton's actions in disposing

4  of his photos, allegedly without complying with the appropriate prison regulation.  Defendant

5  declares that he inspected inmate mail in 2001, pursuant to Cal. Code Regs. tit. xv, §§ 3023,

6  3130-3147, without further specifying the applicable provisions.   MSJ, Nettleton Dec., Exh. A.

7        Section 3023 sets forth, inter alia, that gangs present a serious safety and security

8  threat to prisons in California and that inmates are prohibited from knowingly promoting,

9  furthering or assisting any gang.  Among the referenced procedures, §§ 3130-3147, governing the

10 processing of mail, § 3137 allows for inmates to appeal within 15 days through the inmate

11 grievance procedure, § 3084.1, "a notice that mail is being designated as undelivered...."  Cal.

12 Code Regs. tit. xv, § 3137(b).  To do so "will postpone any disposition of the mail until an appeal

13 decision is made at the second level of appeal review."  Id.  Thereafter, only if the appeal is

14 denied at the second level, will the mail be disposed of per § 3147(a)(5)(B).

15       Under § 3138(b), all packages and mail addressed to an inmate are to be opened

16 and inspected prior to delivery, the purpose of which is, inter alia, "to prevent the introduction of

17 contraband."  There appears to be an exception, under § 3138(d)(1) to the regulation holding

18 them pending appeal under § 3147(a)(5)(B), as to packages which an "inmate is not qualified to

19 receive"; such packages may be disposed of under § 3147(a)(5).  Under § 3147(5)(B):

20            Incoming mail disallowed under the provisions of this article,
             under facility procedures, or pursuant to an appeal, shall be
21            destroyed or mailed at the inmate's expense to an approved outside
             correspondent.  The undelivered mail shall be destroyed 15 days
22            after notification of undelivered mail is forwarded to the inmate
             unless the inmate designates who is to receive the mail and
23            authorizes withdrawal from their trust account to pay for the
             expense of mailing, or as authorized by the institution head,
24            provides sufficient postage stamps already in the inmate's
             possession.

25

26 M. Cry's response to plaintiff's 9/26/01, appeal/request indicates that plaintiff's appeal was an

                                              17

1    automatic second level appeal but was untimely by some three months; on the other hand,

2    plaintiff's unlogged June 29, 2001, appeal was apparently (though not conclusively shown here)

3    rejected for plaintiff's having failed to proceed first through the informal level.  However, even

4    assuming defendant (or others) improperly processed plaintiff's grievance, plaintiff does not

5    make an adequate showing of anything greater than negligence.

6            To the extent that the procedure for disposing of plaintiff's photographs was

7    authorized, plaintiff simply has not shown any entitlement to due process based on even a failure

8    to comply fully with state regulations, even had he adequately demonstrated that that is what

9    occurred.  Plaintiff is correct that prisoners may not be deprived of life, liberty or property

10   without due process.   Opp., p. 8, citing Wolff v. McDonnell, 418 U.S. 539, 556, 94 S. Ct. 2963,

11   2974 (1974); however, the cases cited in that decision in support of that proposition speak to,

12   inter alia, the process that is due prior to being placed in disciplinary confinement, see, e.g.,

13   Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594 (1972) or have been overruled, e.g., Wilwording v.

14   Swenson, 404 U.S. 249, 92 S. Ct. 407 (which, inter alia, did not require exhaustion of

15   administrative exhaustion of prisoner's civil rights claims), overruled in Woodford v. Ngo, __

16   U.S. ___ , 126 S. Ct. 2378 (2006).  Plaintiff cites Hansen v. May, 502 F.2d 728 (9th Cir.  1974),

17   which recognizes the property rights of state prisoners; see also, Serrano v. Francis, 345 F.3d

18   1071 (9th Cir. 2003).  However, plaintiff has provided insufficient evidence that the state

19   procedures themselves for dealing with the processing of mail deemed contraband violates due

20   process or that he was deprived of due process on the occasion of the loss of photos he never

21   saw.

22           State regulations give rise to a liberty interest protected by the Due Process Clause

23   of the federal constitution only if those regulations pertain to "freedom from restraint" that

24   "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of

25   \\\\\

26   \\\\\

1   prison life." Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995);[14] see also,

2   Hydrick v. Hunter, 449 F.3d 978, 999 (9th Cir. 2006).   A recent Ninth Circuit case has found that

3   a state law must satisfy two requirements such that a liberty interest protected by the federal

4   constitution is raised: "the law must set forth 'substantive predicates' to govern official decision

5   making' and... it must contain explicitly mandatory language....'" which interests are generally

6   limited pursuant to Sandin, supra.   Myron v. Terhune, ___ F.3d ___, 2006 WL 2242352 *2 (9th

7   Cir. Aug. 2006).   Even assuming the requisite mandatory language in the state regulations

8   governing processing/disposition of mail, at most, as noted, plaintiff has demonstrated that

9   defendant Nettleton may have been negligent in his conduct, which does not rise to constitutional

10  deprivation implicating due process.   Daniels v. Williams, 474 U.S. 327, 328, 106 S. Ct. 662

11  (1986).

12         To the extent that plaintiff continues to allege that he was denied to due process

13  because defendant's actions were unauthorized and intentional, the United States Supreme Court

14  has held that "an unauthorized intentional deprivation of property by a state employee does not

15  constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth

16  Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v.

17  Palmer, 468 U.S. 517, 533 (1984).   Thus, where the state provides a meaningful postdeprivation

18  remedy, only authorized, intentional deprivations constitute actionable violations of the Due

19  Process Clause.   An authorized deprivation is one carried out pursuant to established state

20  procedures, regulations, or statutes.   Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985);

21

22         [14] "[W]e recognize that States may under certain circumstances create liberty interests
    which are protected by the Due Process Clause. See also Board of Pardons v. Allen, 482 U.S.
23  369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to
    freedom from restraint which, while not exceeding the sentence in such an unexpected manner as
24  to give rise to protection by the Due Process Clause of its own force, see, e.g., Vitek v. Jones,
    445 U.S. 480, 493, 100 S.Ct.1254, 1263-1264 (transfer to mental hospital), and Washington, 494
25  U.S. 210, 221- 222, 110 S.Ct. 1028, 1036-1037 (involuntary administration of psychotropic
    drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the
26  ordinary incidents of prison life." Sandin v. Conner, supra.

see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).  The California Legislature has provided a remedy for tort claims against public officials in the California Government Code, §§ 900, et seq.  In addition, defendants have pointed out that CDCR has a policy for compensating inmates for the loss of their personal property, under CAL. CODE REGS. tit.xv, § 3193.

This court finds that plaintiff cannot dispute any genuine issue of material fact with respect to the confiscation and disposition of his mail/photographs by defendant Nettleton and can demonstrate thereby, at most, negligence but not the violation of any constitutional right. The court will recommend that summary judgment be entered for defendant Nettleton.

Accordingly, IT IS ORDERED that:

1.  Plaintiff's January 23, 2006, motion for a temporary restraining order, construed as a motion for a protective order, is denied; and

2.  Plaintiff's belated motion for leave to file additional interrogatories, filed on January 23, 2006, is denied as untimely.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment, filed on December 30, 2005, be granted and judgment be entered for defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

\\\\\

\\\\\

\\\\\

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED: 8/11/06

4                                                    /s/ Gregory G. Hollows

5                                                    GREGORY G. HOLLOWS
                                                     UNITED STATES MAGISTRATE JUDGE

6  GGH:009
   gord2474.msj

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26